1 | DECLUES, BURKETT & THOMPSON, APC
Attorneys at Law
2 | PATRICIA A. LYNCH, SBN 101711
e-mail address: plynch@dbtlaw.com
3 | JENNIFER K. BERNEKING, SBN 167172
e-mail address: jberneking@dbtlaw.com
4 | 17011 Beach Blvd., Ste. 400
Huntington Beach, CA 92647-7455
5 | Phone: (714) 843-9444
Fax: (714) 843-9452
6
7 | Attorneys for Defendants, PROVENANCE, a California non-profit public benefit corporation, erroneously named and sued herein as Inspire Charter Schools, and CALEB JONES
8
         UNITED STATES DISTRICT COURT
9
   CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION
10

OUR PECULIAR FAMILY, a sole proprietorship; ELISABETH MACY, an individual, d.b.a. Our Peculiar Family; HANNAH MACY, an individual, d.b.a. Our Peculiar Family; MELISSA MACY, an individual, d.b.a. Our Peculiar Family; and CHRISTIANA MACY, an individual, d.b.a. OUR PECULIAR FAMILY

Plaintiffs,

vs.

INSPIRE CHARTER SCHOOLS, a nonprofit corporation; CALEB JONES, individually and in his official capacity as Vendor Support Team Lead for INSPIRE CHARTER SCHOOLS; and DOES 1 through 25,

Defendants.

CASE NO.: 2:20-cv-00331-ODW-JC

*Complaint Filed: 1/13/20*

*Judge Otis D. Wright, II*
*Courtroom 5D*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PURSUANT TO F.R.C.P. RULE 12(b)(6)**

Date: April 13, 2020
Time: 1:30 p.m.
Courtroom: 5D

Defendants PROVENANCE, erroneously named and sued herein as Inspire Charter Schools, and CALEB JONES hereby submit the following Memorandum of Points and Authorities in Support of their Motion to Dismiss plaintiff OUR PECULIAR FAMILY, ELISABETH MACY, HANNAH MACY, MELISSA MACY, and CHRISTIANA MACY's First Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS.

Plaintiffs, OUR PECULIAR FAMILY ("OPF"), ELISABETH MACY ("EM"), HANNAH MACY ("HM"), MELISSA MACY ("MM"), and CHRISTIANA MACY ("CM"), contend that their constitutional rights under the First and Fourteenth Amendments to the U.S. Constitution and under the California Unruh Civil Rights Act were deprived by defendants PROVENANCE, erroneously named and sued herein as Inspire Charter Schools ("PROVENANCE") and its Director of Vendor Support and Onboarding, CALEB JONES ("JONES"), when their application to become a vendor to provide art instruction services was allegedly rejected by defendants. (First Amended Complaint ("FAC") ¶¶ 2, 3). Specifically, plaintiffs contend that their application was rejected solely on the basis of the religious content and/or viewpoint expressed on plaintiffs' website, www.ourpeculiarfamily.com. (FAC ¶¶ 2, 15).

Plaintiffs allege that OPF, run by the individual named plaintiffs, offers art instruction to individuals ages nine to adult. (FAC ¶ 24). In their FAC, plaintiffs allegedly explain the derivation of the OPF name as being borrowed from the King James Version of the Bible, Deuteronomy 14:2, and 1 Peter 2:9. (FAC ¶ 27). The website also allegedly refers to "the Creator" as a motivating inspiration for their artistic vision. (FAC ¶ 28). Yet, plaintiffs allege that they do not proselytize as part of the art lessons offered. (FAC ¶ 28).

Defendant PROVENANCE offers vendors an opportunity to provide students with various products and services. (FAC ¶ 31). Plaintiffs allege that PROVENANCE has adopted a policy of using only secular vendors for products and services. (FAC ¶ 32). Plaintiffs allege that in August 2019 they used PROVENANCE's website vendor application survey to begin the vendor application process. (FAC ¶ 37). Plaintiffs allege that on or about September 6, 2019, defendant JONES emailed plaintiffs that an application from OPF could not be approved because the services appear to be religious in nature or have religious inclinations and that since Inspire Charter Schools is a public institution, all services must be nonsectarian. (FAC ¶ 39).

Plaintiffs allege that there were numerous emails between plaintiffs and JONES regarding their potential vendor application during September 2019. (FAC ¶¶ 40-42, 44, 45). Plaintiffs further allege that JONES informed EM via telephone that plaintiffs would be required to remove Bible verses and references to "the Creator" on the website in order to obtain approval as a vendor. (FAC ¶ 43). Plaintiffs allege that JONES did confirm with plaintiffs that if OPF's services were secular and they were willing to remove the religious content from their website, OPF could continue with the vendor approval process. (FAC ¶ 45). There is no allegation in the First Amended Complaint that plaintiffs ever completed the vendor approval process with OPF.

## II. AUTHORITY.

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for failure to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable theory." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010), "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

## III. PLAINTIFFS' FIRST THROUGH SIXTH CLAIMS UNDER 42 U.S.C. SECTION 1983 FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS TO JONES IN HIS INDIVIDUAL CAPACITY.

To the extent that plaintiffs attempt to argue that defendant JONES is liable for acts in his individual capacity, the first through sixth claims for relief are barred because he has qualified immunity. Qualified immunity is a defense in federal law by which public officials, such as JONES, are shielded from liability for civil damages insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Brewster v. Bd. of Education*, 149 F.3d 971, 977 (9th Cir. 1998).

Qualified immunity is an immunity from suit. *Act Up!/ Portland v. Bagley*, 988 F.2d

868, 872 (9th Cir. 1993). Public officials sued under 42 U.S.C. § 1983 are entitled to qualified immunity if:

> (1) the "right" they allegedly violated was not "clearly established" at the time of the violation, or (2) if a reasonable [official] would have thought that the defendants' actions were constitutional.

*Palmer v. Sanderson*, 9 F.3d 1433, 1435 (9th Cir. 1993) (citations omitted); see also *Neely v. Feinstein*, 50 F.3d 1502, 1507 (9th Cir. 1995). The plaintiffs have the burden of proving that the right allegedly violated was clearly established. *Id.* at 1509. If the plaintiffs meet this burden, then the defendant must prove that his conduct was "reasonable even though it might have violated the law." *Id.* "The threshold determination of whether the law governing the conduct at issue is clearly established is a question of law for the court." *Act Up!*, 988 F.2d at 873.

Here, plaintiffs have not alleged facts sufficient to demonstrate a violation of their constitutional rights. To make matters worse, in order to overcome qualified immunity, the supposed violation of a constitutional right must be analyzed at the proper level of abstraction. The Court in *Brewster, supra,* explained (1) the plaintiff shoulders the burden of proving that the rights he claims are "clearly established," (2) qualified immunity safeguards all but the plainly incompetent or those who knowingly violate the law, since the test allows ample room for reasonable error on the part of the government official, (3) before being charged with monetary liability, public officials must be given clear notice that their conduct is unlawful, and this analysis depends substantially on the level of generality at which the relevant legal rule is to be identified, and (4) in order to ensure that government officials receive necessary guidance, Courts should focus the qualified immunity inquiry at the level of implementation. 149 F.3d at 977.

Plaintiffs are attempting to recover from JONES based upon an alleged denial of their vendor application to PROVENANCE, an application that apparently was never made and never actually denied. Moreover, based upon the allegations in the Complaint, it is clear that plaintiffs were dissatisfied that JONES informed them that Inspire Charter School funds

must be used toward nonsectarian services for their students. (FAC ¶ 45). Indeed, Cal. *Ed. Code* § 47605(d)(1) provides in pertinent part that: "In addition to any other requirement imposed under this part, a charter school shall be nonsectarian in its programs, admission policies, employment practices, and all other operations . . . ." As such, JONES was acting within the confines of the California *Education Code* when he informed plaintiffs that their vendor application process could not be continued. There is simply no indication that JONES believed that his conduct at the time was unlawful or an infringement of plaintiffs' constitutional rights. The Court may properly grant JONES' Motion to Dismiss the first through sixth claims against him in his individual capacity without leave to amend.

## IV. THE SEVENTH CLAIM FOR VIOLATION OF THE UNRUH CIVIL RIGHTS ACT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Plaintiffs' seventh claim for violation of under Unruh Civil Rights Act fails to state sufficient facts to state a claim against defendants herein.

### A. Plaintiffs have not Pleaded Intentional Discrimination.

"[A] plaintiff seeking to establish a case under the Unruh Act must *plead* and prove intentional discrimination in public accommodations in violation of the terms of the Act." *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1149 (1991), emphasis added. In the context of the Unruh Act, intentional discrimination means "'willful, affirmative misconduct.'" *Koebke v. Bernardo Heights Country Club*, 26 Cal.4th 824, 853 (2005). Plaintiffs do not plead any intentional discrimination aside from stating, in conclusory fashion, "Defendants, and each of them, adopted, applied, enforced or otherwise carried out a policy of discrimination by rejecting Plaintiffs' vendor application on the basis of Plaintiffs' religious expression on their website." (FAC ¶ 120). Moreover, inasmuch as the entire FAC is uncertain because no facts are stated regarding plaintiffs' religion and perceived religion, plaintiffs also fail to allege this necessary element for non-ADA Unruh Act claims. *See, Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 668 (2009).

///

### B. No Unreasonable, Arbitrary or Invidious Discrimination is Pleaded.

"[T]he objective of the Act is to prohibit businesses from engaging in *unreasonable, arbitrary or invidious discrimination*." *Howe v. Bank of America N.A.*, 179 Cal.App.4th 1443, 1450 (2009). "Thus, certain types of discrimination have been denominated "reasonable" and, therefore, not arbitrary." (*Id.*, internal quotations and citations omitted.) "[C]omplying with legal requirements" is one such business interest justifying distinctions among its customers. *Harris*, 52 Cal.3d at 1163.

Assuming arguendo that plaintiffs could somehow plead an act of religious discrimination by defendants, even the issues speculatively raised in the FAC (the Creator inspiring artistic vision) implicate key Constitutional provisions germane to public schools: the Establishment Clause and the No Preference Clause. As a California U.S. District Court explained:

> "The Court has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Edwards*, 482 U.S. at 583-84. Courts "recognize that minors' beliefs and actions are often more vulnerable to outside influence." *Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 896 F.3d 1132, 1144 (9th Cir. 2018) (citing *Lee v. Weisman*, 505 U.S. 577, 593-94 (1991)). "Because children's 'experience is limited,' their 'beliefs consequently are the function of environment as much as of free and voluntary choice.'" *Id.* at 1145-56 ....

*Citizens v. Quality Education San Diego v. Barrera*, 333 F.Supp.3d 1003, 1033 (S.D. Cal. 2018). Moreover, the No Preference Clause of the California Constitution, which has no counterpart in the federal Constitution, is interpreted *more* expansively than the Establishment Clause in cases where government approval of religion is at stake. *See, American Family Ass'n, Inc. v. City and County of San Francisco*, 277 F.3d 1114, 1123 (9th Cir. 2002); *Sands v. Morongo Unified School Dist.*, 53 Cal.3d 863, 883 (1991) [finding that when the government sponsors prayers at public school ceremonies it appears to take positions on religious questions and independently violates the "no preference" clause].

Inspire Charter Schools is a public charter school that receives public funding. Were OPF to become an approved vendor for Inspire Charter Schools, the compensation OPF would receive through Inspire would likewise constitute public funding. Because the alleged conduct by Defendants relates to the proscription of religious instruction, plaintiffs simply cannot circumnavigate the No Preference and Establishment Clauses.

That being said, this Court need not apply the *Lemon* Test or engage in additional First Amendment analysis to determine whether giving public funding to OPF for student instruction violates the No Preference or Establishment Clauses. Assuming the truth of plaintiffs' allegations, a refusal to approve public funding for the instruction of Creator given artistic endeavors is not arbitrary by any means, but rather a reasonable policy in furtherance of a school's interest in complying with the No Preference and Establishment Clauses, and therefore not prohibited by the Act.

As the California Supreme Court has noted:

> "Unruh Act issues have often been decided as questions of law on demurrer or summary judgment when the policy or practice of a business establishment is valid on its face because it bears a reasonable relation to commercial objectives appropriate to an enterprise serving the public."

*Harris*, 52 Cal.3d at 1165. Here, the alleged discrimination against what appears to be a religious based instructional provider for minor children in public schools bears a reasonable, if not mandatory, relation to the school's enterprise. *See also, Harris*, 52 Cal.3d at 1166 [The determination of a reasonable commercial objective should not "involve the courts of this state in a multitude of microeconomic decisions that we are ill equipped to make."]

### C. Plaintiffs are not Clients, Patrons or Customers receiving Goods, Services or Facilities.

Plaintiffs do not assert that they are a "client, patron, or customer" receiving "goods, services or facilities" furnished by defendants. *See Alcorn v. Anbro Eng'g, Inc.*, 2 Cal.3d 493, 500 (1970). Instead, plaintiffs allege that they applied to become an approved vendor, i.e. seller of services, so that students may use their allocated instructional funds for art

instruction courses with OPF. (FAC ¶ 31). Plaintiffs do not allege that defendants would have furnished them with any goods, services or facilities. See *Payne v. Anaheim Mem'l*, 30 Cal.Rptr.3d 230, 245 (2005) [finding Section 51 applicable when, *inter alia*, hospital provided physician with facilities to treat patients]. Rather, the FAC alleges that plaintiffs wished to provide students with services, i.e., art lessons, paid for with public school dollars from Inspire. (FAC ¶ 31).

D.   **Plaintiffs Fail to State a Claim under Civil Code section 51.5.**

"[T]he analysis under Civil Code section 51.5 is the *same* as the analysis . . . set forth for [Civil Code section 51]." *Semler v. General Electric Capital Corp.*, 127 Cal.Rptr.3d 794, 812 (2011), emphasis added; *see Jackson v. Superior Court*, 36 Cal.Rptr.2d 207, 209 & n.3; *Roth v. Rhodes*, 30 Cal.Rptr.2d 706, 709 [analyzing classifications in Sections 51.5 in the same way as classifications under Section 51 are analyzed]. Thus, for the same reasons plaintiffs fail to state a claim under Section 51, plaintiffs also fail to state a claim under Section 51.5.

E.   **Plaintiffs Fail to State a Claim under Civil Code section 52.1.**

In order to establish a cause of action for violation of the Bane Act under Civil Code section 52.1, plaintiffs must establish that: (1) defendants made threats of violence against them causing them to believe that if they exercised their right defendants would commit violence against them, or (2) defendants acted violently against them to prevent them from for exercising their rights or to retaliate against them for exercising her rights. CACI Civil Jury Instruction No. 3066, Spring 2019 Edition. *See also, Cabesuela v. Browning-Ferris Industries*, 68 Cal.App.4th 101, 111 (1988) [to state a cause of action under the Bane Act there must first be violence or intimidation by threat of violence].

Here, there is no allegation of any threat of violence or violence against plaintiffs by defendants within the meaning of Civil Code section 52.1. Plaintiffs have only plead a conclusory allegation of an attempt by defendants to coerce them into altering their website. (FAC ¶ 121). In short, the facts of the FAC as plead make it clear that defendants did not

threaten plaintiffs to keep them from applying to become a vendor as envisioned by the Bane Act.

Consequently, the Court may properly grant defendants' Motion to Dismiss the seventh claim in its entirety.

## V.   CONCLUSION.

For the reasons set forth above, plaintiffs have failed to properly allege any claim upon which relief may be granted in the Complaint as to JONES in his individual capacity or as to PROVENANCE. The Court may properly grant this Motion to Dismiss without leave to amend.

Dated: March 13, 2020          **DECLUES, BURKETT & THOMPSON, APC**

BY: *s/Jennifer K. Berneking*
PATRICIA A. LYNCH
JENNIFER K. BERNEKING
Attorneys for Defendants, PROVENANCE, a California non-profit public benefit corporation, erroneously sued and served as Inspire Charter Schools, and CALEB JONES