O

United States District Court
Central District of California

| | |
|---|---|
| OUR PECULIAR FAMILY, a sole proprietorship, ELISABETH MACY, an individual, d.b.a. Our Peculiar Family; HANNAH MACY, an individual, d.b.a. Our Peculiar Family; MELISSA MACY, an individual, d.b.a. Our Peculiar Family; and CHRISTIANA MACY, an individual, d.b.a. Our Peculiar Family,<br><br>        Plaintiffs,<br><br>    v.<br><br>INSPIRE CHARTER SCHOOLS, a nonprofit corporation; CALEB JONES, individually and in his official capacity as Vendor Support Team Lead for INSPIRE CHARTER SCHOOLS; and DOES 1 through 25,<br><br>        Defendants. | Case No.: 2:20-cv-00331-ODW (JCx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [30]** |

## I.   INTRODUCTION

Defendants Inspire Charter Schools ("Inspire") and Caleb Jones ("Jones") (collectively, "Defendants") filed their Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Motion") on March 13, 2020.  (Mot. to Dismiss, ECF No. 30.)

Plaintiffs Our Peculiar Family ("OPF"), Elisabeth Macy, Melissa Macy, Hannah Macy, and Christiana Macy (collectively, "Plaintiffs") opposed ("Opposition") on March 21, 2020. (Opp'n to Mot. ("Opp'n"), ECF No. 33.) Defendants replied on March 30, 2020. (Reply in Supp. of Mot. ("Reply"), ECF No. 34.)

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.[1]

## II. PLAINTIFFS' ALLEGATIONS

Plaintiffs are a religious, family-run business offering art instruction "to individuals ranging in age from nine to adult." (First Am. Compl. ("FAC") ¶ 24, ECF No. 27.) Plaintiffs promote their art lessons on their website. (FAC ¶ 25.) "Although Plaintiffs express their religious identity in their website, the services they provide are nonsectarian." (FAC ¶ 28.) The following is one example of religious content on Plaintiffs' website:

> We have come to realize that our eyes see beauty that others sometimes miss. In that beauty we see purpose and meaning. From a decrepit old building or the many colors found on a rusty old car, to the barren stillness of our desert valley to a wondering child's face, we believe the world around us reflects the beauty and glory of its Creator.

(FAC ¶ 28.)

Inspire operates charter schools throughout California, receives public funding, and "partner[s] with vendors in providing students with various products and services." (FAC ¶¶ 30–31, 39.) Jones is employed by Inspire as the "Vendor Support Team Lead." (FAC ¶ 21.) "Vendors who are approved enter into a private contractual relationship with Inspire, but do not provide outsourced governmental functions as independent contractors." (FAC ¶ 33.) To be approved as a vendor, applicants must complete Inspire's application survey. (FAC ¶ 34.)

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

In August 2019, Plaintiffs completed one such survey, attempting to contract with Inspire to provide art instruction. (FAC ¶¶ 37–38.) Plaintiffs then received an email from Jones rejecting the application, stating "the services appear to be religious in nature or have religious inclinations." (FAC ¶ 39.) After Plaintiffs asked for clarification, Jones responded that the "decision was based upon the content included on your website." (FAC ¶¶ 40–41.) He continued: "All services and content on websites must be secular in nature for a vendor to be eligible for enrichment funds." (FAC ¶ 41.) After Plaintiffs requested clarification concerning what content was preventing approval of their application, Jones advised that Plaintiffs must remove Bible verses and references to "the Creator" on their website to have their application approved. (FAC ¶ 43.) Jones later advised that "[i]f all services are secular and [i]f you were willing to remove this content from your website, we could continue the approval process." (FAC ¶ 45.) Plaintiffs claim that Defendants' rejection of their application caused them economic damages, violated their constitutional rights, and violated California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51, 51.5, 52, and 52.1. (FAC ¶¶ 47–125.)

### III.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a claim for relief. A complaint may be dismissed for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts alleges under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In determining whether a complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to the plaintiff. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a Rule 12(b)(6) dismissal, a complaint must allege enough specific facts to provide both "fair notice" of the particular claim being asserted and "the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007). While detailed factual allegations are not required, a complaint with "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" and "'naked assertion[s]' devoid of 'further factual enhancement'" would not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

## IV.   DISCUSSION

### A.   Qualified Immunity

Defendants move to dismiss claims one through six as to Jones in his individual capacity based on qualified immunity. (Mot. 3–5.)

Qualified immunity immunizes government officials from civil rights actions seeking damages if the official can show that, even in the light most favorable to the plaintiff, the official did not violate the plaintiff's constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). To resolve whether a defendant is entitled to qualified immunity, courts must determine whether the plaintiff has sufficiently alleged that (1) the official violated a constitutional or statutory right, and (2) the right was "clearly established" such that a reasonable official would understand his actions to be unconstitutional. *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). Dismissal under Rule 12(b)(6) is only appropriate where a court "can determine, based on the complaint itself, that qualified immunity applies." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001).

*1. Plaintiffs Adequately Allege That Jones Violated A Constitutional Right.*

The first step in a qualified immunity analysis is, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. Here, Plaintiffs' version of the facts, taken in a light most favorable to Plaintiffs and reading the FAC liberally, sets out a violation of Plaintiffs' First Amendment rights.

Plaintiffs applied to provide nonsectarian art instruction to Inspire and Jones rejected that application due to religious content on Plaintiffs' website. (FAC ¶¶ 38–43.) Jones then conditioned Plaintiffs' eligibility to contract with Inspire on removing this content from the website, regardless of any potential impact the content may have on Plaintiffs' art instruction. (FAC ¶ 45.)

Defendants maintain that denial of Plaintiffs' application was permissible due to California Education Code section 47605(d)(1), which provides in part: "In addition to any other requirement imposed under this part, a charter school shall be nonsectarian in its programs, admission policies, employment practices, and all other operations." (Mot. 5.) In other words, Defendants argue that their obligation to be "nonsectarian" in administering a school program required them to exclude any vendor that publicly espoused religious views. (Mot. 5.) Defendants are incorrect. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017).

In *Trinity Lutheran*, Missouri instituted a nonprofit grant program to replace playground surfaces. *Id.* at 2017. Missouri's Department of Natural Resources had a "strict and express policy of denying grants to any applicant owned or controlled by a church, sect, or other religious entity." *Id.* Missouri thus denied Trinity Lutheran's application solely because it was a church. *Id.* at 2018. The Supreme Court concluded that Missouri had violated the Free Exercise Clause of the Constitution because it had expressly discriminated against Trinity Lutheran based on its status as a religious organization. *Id.* at 2021. The Supreme Court concluded, "the exclusion of

Trinity Lutheran from a public benefit for which it is otherwise qualified, solely because it is a church, is odious to our Constitution . . . and cannot stand." *Id.* at 2025.

Defendants' policies here are even more preclusive than the unconstitutional policies in *Trinity Lutheran*. Not only do Defendants' policies exclude all churches from providing services, they apparently preclude *all* services by *any* potential vendor with religious statements on their website. Defendants do not explain how institution of such a categorical requirement is in keeping with their obligation to facilitate "nonsectarian" services, nor do they offer facts to support that Plaintiffs' application implicated Establishment Clause concerns.

Instead, without addressing controlling Supreme Court precedent or offering authority of their own, Defendants maintain that by allowing Plaintiffs "to become an approved vendor without modifying its website to remove sectarian references, Inspire could potentially be favoring plaintiffs' religious views in violation of the No Preference and Establishment Clauses." (Reply 3.) The Supreme Court in *Trinity Lutheran* rejected similarly vague citation of religious establishment concerns, stating that "[i]n the face of the clear infringement on free exercise before us, that interest cannot qualify as compelling." 137 S. Ct. at 2015. And like in *Trinity Lutheran,* the policy here "expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character" and therefore "imposes a penalty on the free exercise of religion that triggers the most exacting scrutiny." *Id.* at 2021.

Because Defendants offer no argument or authority to withstand such scrutiny, the Court finds that Plaintiffs have sufficiently alleged that Jones violated a constitutional right.

2.   *Plaintiffs' FAC Sufficiently Implicates A Clearly Established Right.*

The Court now turns to the second step of the qualified immunity analysis, i.e. whether the contours of the First Amendment right at issue were sufficiently clear that "every reasonable official" would have understood that what he was doing violated

the First Amendment. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks). "The right the official is alleged to have violated must have been 'clearly established' in an appropriately particularized sense." *Calabretta v. Floyd*, 189 F.3d 808, 812 (9th Cir. 1999). "[A] case directly on point" is not required to show the right in question was clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd,* 563 U.S. at 741.

The Supreme Court "has repeatedly confirmed that denying a generally available benefit solely on account of religious identity imposes a penalty on the free exercise of religion." *Trinity Lutheran*, 137 S. Ct. at 2019. Plaintiffs, like the plaintiffs in *Trinity Lutheran*, are beholden to a policy that "expressly discriminates against otherwise eligible recipients by disqualifying them from a public benefit solely because of their religious character." *Id.* at 2021. Longstanding Supreme Court precedent "make[s] clear" that "such a policy imposes a penalty on the free exercise of religion." *Id.*

Defendants argue in conclusory fashion that "[t]here is simply no indication that Jones believed that his conduct at the time was unlawful or an infringement of plaintiffs' constitutional rights." (Mot. 5.) Aside from the deficient arguments rejected above, however, Defendants offer no argument with respect to this step of the qualified immunity analysis. (*See generally* Mot.; Reply.) Defendants therefore do not and cannot dispute that Plaintiffs' right to provide nonsectarian art instruction free from express religious discrimination was clearly established since at least *Trinity Lutheran*. Hence, no reasonable official could have believed it was lawful to condition Plaintiffs' eligibility to provide such services on removing the religious content from Plaintiffs' website. *Saucier,* 533 U.S. at 201; *al-Kidd,* 563 U.S. at 741.

Accordingly, Defendants' Motion is **DENIED** to the extent it is based on qualified immunity.

### B. Unruh Act[2]

Defendants move to dismiss Plaintiffs' seventh claim for violation of the Unruh Act for alleged lack of standing and failure to allege the requisite discrimination. (Mot. 5–8.) Defendants argue that Plaintiffs lack standing under the Unruh Act because they are not "client[s], patron[s] or customer[s] receiving goods, services, or facilities." (Mot. 7–8 (internal quotation marks omitted).) According to Defendants, Plaintiffs cannot state an Unruh Act Claim because they are sellers of services outside the scope of the Unruh Act. (*Id.*) The Court agrees and therefore does not reach Defendants' remaining arguments.

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . religion . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). "Standing under the Unruh Civil Rights Act is broad." *Osborne v. Yasmeh*, 1 Cal. App. 5th 1118, 1127 (2016). "When 'any person or group of persons is engaged in conduct of resistance to the full enjoyment of any of the rights described in this section . . . any person aggrieved by the conduct may bring a civil action . . . .'" *Id.* (citing Cal. Civ. Code § 52(c).) "[A]n individual plaintiff has standing under the [Unruh] Act if he or she has been the victim of the defendant's discriminatory act." *Id.* (quoting *Angelucci v. Century Supper Club,* 41 Cal. 4th 160, 175 (2007).

However, "there is no indication that the Legislature intended to broaden the scope of [the Unruh Act] to include discriminations other than those made by a 'business establishment' in the course of furnishing goods, services or facilities to its clients, patrons or customers." *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 500 (1970). Courts have thus refused to extend the Unruh Act to claims arising out of employment or contracts for services. *See, e.g.*, *Johnson v. Riverside Healthcare Sys.,*

---

[2] Plaintiffs agree to withdraw all portions of the seventh claim based on California Civil Code Section 52.1. (Opp'n 14.) The Court therefore does not address Defendants' grounds to dismiss those portions.

*LP*, 534 F.3d 1116, 1126 (9th Cir. 2008) ("California law continues to require a plaintiff asserting a claim under § 51 to demonstrate that his relationship with the offending organization was similar to that of the customer in the customer-proprietor relationship.") (internal quotation marks omitted); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1073 (N.D. Cal. 1988).

In *Gauvin*, the court held that a freeway subcontractor could not sue under the Unruh Act for alleged discrimination in the award of subcontract work. The court found that the relationship between the subcontractor and the California Department of Transportation fell outside the Unruh Act, which "only applies to business establishments in the context of the supply of services or facilities to clients, patrons, or customers." 682 F. Supp. at 1073.

Here, Plaintiffs do not allege that Defendants denied them "goods, services, or facilities" or that they are a prospective "client, patron or customer" of Inspire. Rather, like the subcontractor in *Gauvin*, Plaintiffs were denied the ability to enter into a services contract due to alleged discrimination. Expanding the Unruh Act to include this kind of discrimination would improperly extend its scope beyond what the California Supreme Court has determined the legislature intended. *Johnson*, 534 F.3d at 1124 (citing *Alcorn*, 2 Cal. 3d at 500) ("The court has explained . . . that the Unruh Act . . . does not extend to claims for employment discrimination because other California statutes are specifically tailored to provide relief for such conduct, most notably the FEHA, which was passed by the California Legislature in the very same session as the Unruh Act.").

As the FAC's allegations show that Plaintiffs' relationship with Defendants is not the type of relationship protected under the Unruh Act, Defendants' Motion to Dismiss Plaintiffs' Unruh Act claim is **GRANTED**. Additional allegations consistent with the FAC could not possibly cure this deficiency; therefore, dismissal is **without leave to amend**. *See Carrico v. City & Cty. of San Francisco*, 656 F.3d 1002, 1008

(9th Cir. 2011) ("[Leave to amend] is properly denied . . if amendment would be futile.").

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion (ECF No. 30). Plaintiffs' claim for violation of the Unruh Act is hereby **DISMISSED without leave to amend**. The Motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

June 23, 2020

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**